'O'

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 2:18-CR-00048-CAS |
| | ) | Case No. 2:15-CR-00477-CAS |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | **ORDER GRANTING DEFENDANT'S** |
| IVAN GREENHUT, | ) | **MOTION FOR MODIFICATION OF** |
| | ) | **TERM OF IMPRISONMENT** |
| Defendant | ) | **PURSUANT TO 18 U.S.C. § 3582(C)(1)** |
| | ) | |
| | ) | |

I. INTRODUCTION AND BACKGROUND

On January 23, 2017 defendant Ivan Greenhut was sentenced to 24 months of imprisonment following his conviction at trial for conspiring to give illegal gratuities in violation of 18 U.S.C. § 371. Specifically, a jury found that Greenhut offered illegal gratuities to government employees in the United States and the Philippines in exchange for purchases from companies that Greenhut owned or operated. The Court subsequently released Greenhut on bail pending his appeal.

During this release, Greenhut was arrested on charges of possession and distribution of child pornography. ECF No. 4. Arresting agents found that Greenhut possessed 107 videos containing child pornography on a laptop and had distributed three videos

containing child pornography using a file-sharing platform online. Id. Pursuant to a binding plea agreement, on April 5, 2018, the Court sentenced Greenhut to 40 months of imprisonment to run concurrently to the undischarged term of imprisonment imposed in Greenhut's prior conviction for the illegal gratuities. ECF No. 29. He is currently expected to be released on December 7, 2020, and to serve the remainder of his sentence at a halfway house beginning on July 3, 2020.

Greenhut filed a motion for a reduction in sentence pursuant to 18 U.S.C. § 3582(c) on April 17, 2019. ECF No. 38.[1] On November 21, 2019, the Court denied Greenhut's motion. See ECF No. 47 ("Nov. 21 Order"). Greenhut filed a motion for reconsideration on December 5, 2019, raising the same issues. See ECF No. 48. The Court denied that motion on January 31, 2020. See ECF No. 51 ("Jan. 31 Order").

Greenhut is incarcerated at the Federal Correctional Institution at Terminal Island ("FCI-TI") in San Pedro, California. In the time since the Court's January 31 order, at least 644 incarcerated persons—more than 60 percent of the inmate population—and at least 15 staff members at FCI-TI have tested positive for the novel coronavirus known as COVID-19. See Bureau of Prisons, COVID-19 Cases (available at https://www.bop.gov/coronavirus) (accessed May 11, 2020); Bureau of Prisons, FCI Terminal Island Information (listing FCI-TI inmate population as 1,051 person) (available at https://www.bop.gov/locations/institutions/trm) (accessed May 11, 2020). Six inmates at FCI-TI have died from COVID-19.

///
///

---

[1] Greenhut, initially appearing pro se, titled his original motion as arising under 18 U.S.C. § 3582(c)(2). However, the sentencing relief provided by subsection (c)(2) only applies to defendants who were "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o)." See 18 U.S.C. § 3582(c)(2). Because this section does not apply to the offenses for which Greenhut has been convicted, the Court—like the United States—construes the motion to arise under § 3582(c)(1) instead.

Citing these concerns, Greenhut filed the present motion to reduce his term of imprisonment on April 6, 2020. See ECF No. 270 ("Mot.").[2] The government filed an opposition on April 20, 2020. See ECF No. 52 ("Opp."). Although Greenhut had not yet tested positive for the virus at that time he filed his motion, see Gonzalez Decl., ¶ 2(g), he subsequently tested positive on May 5, 2020. See Kumar Decl., Ex. 1 at 30. On May 8, 2020, Greenhut—now appearing through appointed counsel with the Office of the Federal Public Defender—filed a reply. See ECF No. 54 ("Reply"). The government filed a supplemental brief on May 15, 2020. See ECF No. 55 ("Govt. Supp.").

On May 19, 2020, the Court held a hearing and issued a tentative ruling indicating that it was inclined to grant Greenhut's motion. See ECF No. 61. At the hearing, the government objected to the Court's tentative ruling on grounds that Greenhut remained a danger to the community, and, despite testing positive for COVID-19, had presented as asymptomatic for any complications for more than two weeks. Id. The Court directed the parties to file supplemental responses related to Greenhut's health and healthcare treatment options, which the parties did on May 20, 2020 and May 21, 2020. See ECF No. 62 ("Govt. Supp. Resp."), ECF No. 64 ("Greenhut Supp. Resp."). The Court then held a further hearing on the motion, at which the Court ordered the government to present a status report and ordered an additional hearing for June 3, 2020. See ECF No. 68. The government filed its further status report on June 1, 2020. See ECF No. 69 ("Govt. Status Report"). The Court then held a hearing on June 3, 2020, at which Greenhut appeared by telephone.

Having considered the parties submissions and arguments, the Court now finds and concludes as follows.

## II.    LEGAL STANDARD

The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 ("FSA") amended the United States Code to promote the rehabilitation of prisoners and "unwind decades of

---

[2] Greenhut only filed the motion, and his reply, on Docket No. 2:15-CR-00477. All other docket citations are to the 2:18-CR-00048 docket.

mass incarceration." See United States v. Rodriguez, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019) (citing Cong. Research Serv., R45558, The First Step Act of 2018: An Overview 1 (2019)).

Among other things, the FSA amended the procedures by which defendants can seek sentence reductions through modification.  Previously, a defendant could only petition the Director of the Bureau of Prisons ("BOP") for a modified sentence, who could then move the district court at his or her discretion for relief.  See U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n. 4 (U.S. Sentencing Comm'n 2018) ("U.S.S.G.").  "The BOP Director rarely did so."  Rodriguez, 424 F. Supp. 3d at 680 (citing Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice)).

Correcting this flaw, the FSA now allows defendants to petition district courts directly for sentence modifications.  See 18 U.S.C. § 3582(c)(1)(A)(i).  The statute sets forth three requirements: "First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. Second, a district court may grant [a sentence reduction] only if 'extraordinary and compelling reasons warrant such a reduction' and 'that such reduction is consistent with applicable policy statements issued by the Sentencing Commission.'  Third, the district court must also consider 'the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable.'"  Rodriguez, 424 F. Supp. 3d at 680 (quoting 18 U.S.C. § 3582(c)(1)(A)) (internal citations omitted).  Even where these requirements are otherwise met, a court must deny a motion for compassionate release if it determines that releasing a defendant would pose a "danger to the community."  See United States v. Eberhart, No. 13-CR-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("[A] reduction in sentence under § 3582(c)(1)(A) requires a determination that 'the defendant is not a danger to the safety of any other person or to the community[.]'") (citation omitted).

/ / /

/ / /

### III. DISCUSSION

Having tested positive for COVID-19, Greenhut is eligible for a modified sentence pursuant to each requirement of § 3582(c)(1).

First, the government concedes that Greenhut filed a request for compassionate release with his warden on March 27, 2020, and that more 30 days have elapsed without receiving a response to that request. See Govt. Supp Br. at 2. The Court accordingly finds that Greenhut has exhausted his administrative remedies.

Second, Greenhut presents extraordinary and compelling reasons that justify his release. Although the FSA does not define "what constitutes 'extraordinary and compelling'" reasons that justify compassionate release, Rodriguez, 424 F. Supp. 3d at 681, this Court follows the district courts which have concluded that a court "assumes the same discretion as the BOP Director when it considers a compassionate release motion properly before it" and may "consider the vast variety of circumstances that may constitute 'extraordinary and compelling[.]'" United States v. Wade, No. 99-CR-00257-CAS-3, 2020 WL 1864906, at *5 (C.D. Cal. Apr. 13, 2020) (quotations omitted) (citing cases). Having tested positive for COVID-19, Greenhut is at heightened risk of serious complications from COVID-19 because of his medical condition. Medical records show that Greenhut suffers from chronic heart disease, suffered a heart-attack in 2011, received an angioplasty in 2016, has high blood pressure and high cholesterol levels, and has been diagnosed as prediabetic. See ECF No. 39 at 10, Ex. B. The United States Centers for Disease Control and Prevention ("CDC") has found that these conditions make it more likely that Greenhut will suffer grave consequences, and even death, as a result of his confirmed infection. See U.S. Centers for Disease Control and Prevention, "Coronavirus Disease 2019 (COVID-19): People Who Are At Higher Risk" (2020) (https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html) (accessed May 11, 2020).

These factors comprise a compelling and extraordinary reason to grant Greenhut's motion. See United States v. Connell, No. 18-CR-02801-RS, 2020 WL 2315858, at *6

(N.D. Cal. May 8, 2020) (finding extraordinary and compelling reasons for compassionate release where the defendant was individually at high risk from severe illness from COVID-19, incarcerated at an institution with an outbreak of the virus, and had in fact contracted the virus); United States v. Barber, No. 18-CR-00446-AA, 2020 WL 2404679, at *5 (D. Or. May 12, 2020) (same). And in fact, the government now agrees with that conclusion. See Govt. Status Report at 1.

Third, granting Greenhut's motion, conditioned on the additional supervised release terms discussed below, would result in a sentence consistent with the factors set forth in 18 U.S.C. § 3553(a). Pursuant to the terms of his 24 and 40-month concurrent sentences, Greenhut is scheduled to be released from FCI-TI to a halfway house on July 3, 2020, and he is scheduled to be released from BOP custody on December 7, 2020. The Court previously determined that this sentence is consistent with the factors set forth in § 3553(a). Although the government contends that releasing Greenhut from BOP custody prior to the end of his sentence on December 7 would fail to (i) adequately punish Greenhut's offenses, (ii) deter future wrongdoing by others, or (iii) secure the community from the danger Greenhut presents in contravention to the factors set forth in § 3553(a)(2)(A)-(C), the Court finds that releasing Greenhut approximately six months early pursuant to the strict conditions set forth below effectively mitigates those concerns, while also ensuring that Greenhut receives "medical care . . . in the most effective manner" pursuant to § 3553(a)(2)(D).

With respect to the adequacy of Greenhut's punishment pursuant to § 3553(a)(2)(A), Greenhut has served substantially all of his original sentence in BOP custody (nearly 38 months in total), and the Court's terms of supervised release term will significantly limit Greenhut's liberties for the balance of the early release period. With respect to the deterrence factor set forth in § 3553(a)(2)(B), the Court believes that Greenhut's modified sentence remains sufficiently severe to deter criminal conduct, especially given the unique circumstances related to an historic pandemic that support the modification to Greenhut's sentence, as well as the supervised release terms that the Court is imposing. And with

respect to the danger Greenhut presents to the community under § 3553(a)(2)(C), the Court is satisfied by the terms of its supervised release restrictions that Greenhut will not pose a danger to the community upon release.

For these reasons, the Court finds that Greenhut's motion meets all three requirements of § 3582(c)(1).

## IV. CONCLUSION

Greenhut's motion is **GRANTED**. Greenhut shall be released from BOP custody forthwith, followed by a life term of supervised release subject to the conditions set forth in the Court's judgment and commitment order dated April 5, 2018. See ECF No. 29. As an additional term of supervised release, Greenhut shall be confined to his home until December 7, 2020. During this time, Greenhut shall only be permitted to leave his home to receive medical treatment, attend religious services, or engage in other visits preapproved by his probation officer. The term of home confinement shall be subject to electronic voice monitoring, as set forth in the Judgment and Commitment Order filed herewith.

If applicable, as a condition precedent to release, Greenhut shall submit to 14-day quarantine at an appropriate BOP facility or, in appropriate cases subject to the BOP's case-by-case discretion, in the residence to which she is being transferred, inclusive of any time already spent in such quarantine. As a condition precedent to release, Greenhut shall also submit to a health screening by the BOP. If Greenhut is found to be exhibiting symptoms consistent with COVID-19 or is confirmed to have COVID-19, Greenhut shall not be released to the public because of the public health danger he may pose to the community.

Following release, Greenhut shall submit to screening for COVID-19 as directed by the United States Probation and Pretrial Services Office ("USPO"). Should Greenhut then or thereafter exhibit symptoms consistent with COVID-19, Greenhut shall remain in quarantine or isolation as directed by USPO in a form directed by USPO, including self-isolation or self-quarantine. During the period of supervised release, Greenhut shall comply with national, state, and local public-health orders regarding COVID-19, including

but not limited to California's Executive Order N-33-20 (March 19, 2020) and, if applicable, the Los Angeles "Safer At Home" Order, Public Order Under City of Los Angeles Emergency Authority (March 19, 2020), as amended.

**IT IS SO ORDERED.**

DATED: June 3, 2020

*Christina A. Snyder*

CHRISTINA A. SNYDER
UNITED STATES DISTRICT JUDGE